Mrs. Kersey, a cousin of the defendant and of Alred, testified that the defendant and Alred, his brother-in-law, came one Sunday evening to the residence of her husband in Greensboro in the buggy and with the horse of the defendant; that the defendant asked for her husband and said that he had bought Alred's growing crop and wished to get the money to pay him for it; that Alred was broke — was out collecting money, and was going to Missouri; that the night before Alred came to his house and told him that his crop was under execution, and wanted him to buy it; that he was going away; that Alred could not go unless the defendant could get the money from witness's husband; that witness asked defendant, "What is to become of Sally?" Alred's wife, to which he replied that she did not know her husband was going away until the night before; that she was not going until further orders, and that in the meantime he (defendant) was to take care of her; that he didn't reckon that witness would ever see Alred again; that on Monday her husband let defendant have the money, $150, which he paid over to Alred, who took the next train for the west.
One witness testified that when defendant returned he stated that Alred had gone to High Point or Greensboro to get work. Another, that he said on his return that Alred was in a quandary, when he left him, whether to go to Beaufort or Missouri.
Kersey stated that he lent the defendant the sum of $150, which was paid to Alred; that defendant then endeavored to persuade (343) Alred to give up his purpose of going, and offered to furnish him a house free of rent if he would give up the idea of going.
In the course of the trial the defendant's counsel asked a witness if he did not hear Alred say, sometime before he went away, that he intended to get the defendant into a scrape. Plaintiff's counsel objected to this question, and the testimony was ruled out, whereupon the defendant excepted.
The court charged the jury that although a debtor may be embarrassed, and may be preparing to leave the country to avoid his creditors, yet, if *Page 263 
a person simply purchase his property for value, or to save his debt, and with no other purpose or intent, he would not be made liable for the debts of such debtor; but if he knows that the debtor is insolvent for embarrassed, and is preparing to avoid his creditors, and he furnish him means of transporting either himself or his property, then the law presumes he intended the consequences of his act, and unless he shows that such was not his intent, he will be held responsible. Therefore, if the jury were satisfied that the defendant knew of Alred's embarrassment before he left home, and that Mrs. Kersey's statement was true, plaintiff was entitled to recover. But if the defendant simply purchased the crop and went to Greensboro for the money, and with no other intent, then they should find for the defendant. Defendant's counsel excepted to the charge.
Verdict and judgment for plaintiff. Appeal by defendant.
Taking the whole of his Honor's charge together, and applying it to the facts stated by the witnesses, Mr. and Mrs. Kersey, it is correct in principle, and is fully sustained by Moss v. Peoples, 51 N.C. 140. If the defendant with his horse and buggy carried the debtor to Greensboro and there procured the money to enable him to leave the State, and if this were done with the intent to assist him (344) in the purpose of avoiding his creditors, it was a fraudulent removal of the debtor within the meaning of the statute, and the defendant must abide the consequences.
The testimony which was offered on the part of the defendant as to the declaration of the debtor that "he intended to get him into a scrape," was properly rejected on the ground of its immateriality. The debtor did not get him into a scrape, and it was a matter of no consequence on the trial of the issue whether he did it designedly or not.
PER CURIAM. No error.